UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

APPLE HILL SOLAR LLC,　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　v.　　　　　　　　　)　　Case No. 2:23-cv-644
　　　　　　　　　　　　　　　　)
MARGARET CHENEY and ANTHONY　 )
ROISMAN,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　)

## <u>OPINION AND ORDER</u>

Plaintiff Apple Hill Solar LLC ("Apple Hill") has filed a Complaint against Margaret Cheney and Anthony Roisman ("Defendants") for actions taken in their capacities as Commissioners of the Vermont Public Utility Commission ("PUC"). The case arises out of Apple Hill's efforts to develop a solar energy facility in Bennington, Vermont, and the related PUC permitting process. The Complaint asserts that in the course of that process, Defendants failed to adhere to state law and subsequently misled the Vermont Supreme Court. Apple Hill's claims allege violations of the Takings Clause, as well as due process, equal protection, and ethical violations. The Complaint seeks primarily injunctive and declaratory relief.

Now before the Court is Defendants' motion to dismiss in which they assert a host of defenses including judicial immunity, collateral estoppel, and failure to state plausible

causes of action.  Defendants also contend that Defendant
Roisman should be dismissed from the case because he is no
longer on the PUC.  For the reasons set forth below, the motion
to dismiss is granted.

### Factual and Procedural Background

The Complaint alleges that over the past ten years, Apple
Hill has been seeking to develop a 2.0 megawatt solar energy
facility (the "Project") on land in Bennington, Vermont.  In
doing so, Apple Hill has appeared before the PUC on several
occasions in an effort to obtain a Certificate of Public Good
("CPG").  The allegations in this case focus on Apple Hill's
most recent appearance before the PUC and appeal to the Vermont
Supreme Court.

The procedural history begins in or around 2013, when
counsel for Apple Hill first sought standard-offer contracts for
two solar facilities, including Apple Hill.  The PUC found that
the proposed facilities did not qualify for standard-offer
contracts because they were actually a single facility "located
on the same parcel of land" and with "similar interconnection
points," which when combined exceeded the statutory limit on
generation capacity.  *In re Programmatic Chances to the Standard
Offer Program*, 2014 VT 29, ¶¶ 1, 7.  On appeal, the Vermont
Supreme Court concluded that the two facilities were

sufficiently independent and remanded to the PUC for further
agency action.  *Id.*, ¶¶ 10-16.

In 2018, the PUC granted a CPG for the Apple Hill facility.
The Project's neighbors appealed the decision.  The Vermont
Supreme Court again reversed, concluding that the PUC had
improperly interpreted the Town of Bennington's lack of
opposition to the Project as an indication that the Project
complied with the Town Plan.  *In re Apple Hill Solar LLC*, 2019
VT 64, ¶ 30.  The court thus remanded the matter to the PUC "to
assess the impact of the project on the orderly development of
the region in light of the Town Plan without consideration of
the selectboard's purported position on the subject."  *Id.*, ¶
31.

On remand, "[t]he parties agreed that no additional
evidence was necessary."  *In re Apple Hill Solar*, 2021 VT 69, ¶
8.  The PUC appointed a hearing officer to address issues
identified by the Vermont Supreme Court, and the hearing officer
recommended that the PUC deny the CPG petition.  Specifically,
the hearing officer concluded that the Project would violate two
Town Plan standards insofar as it was a commercial development
that was incompatible with the rural character of the area and
would be sited in a prominently visible location on a hillside.
¶ 7.  The PUC issued a proposed decision and provided the
parties the right to file briefs and present oral argument.

3

Apple Hill availed itself of those rights.  After hearing argument, the PUC adopted the hearing officer's recommendation and denied the request for a CPG.

Apple Hill appealed to the Vermont Supreme Court.  The court reversed in part, concluding that the cited provision in the Town Plan regarding rural character of the area was too broad and general to constitute a clear, written community standard.  *Id.*, ¶ 42.  The court affirmed the PUC's conclusion that the Project would violate the Town Plan standard prohibiting development in prominently visible locations on hillsides.  *Id.,* ¶ 50.  The court then remanded the matter to the PUC to reassess the application without the conclusion that the proposed siting "would interfere with orderly development and cause an undue adverse aesthetic impact," since Vermont law only required the PUC to give such a standard "due consideration" and did not compel denial of the permit.  *Id.*, ¶ 67 (citing 30 V.S.A. § 248(b)(1)).  "Ultimately," the court concluded, "the PUC is charged with determining whether the project will serve the public good."  *Id.*

On remand, after receiving additional briefing from the parties, the PUC again denied the CPG petition.  The PUC "concluded that the placement of the proposed project in a prominently visible location on a hillside would result in undue interference with the orderly development of the region and have

an undue adverse impact on aesthetics." *In re Petition of Apple Hill Solar LLC*, 2023 VT 57, ¶ 9, *reargument denied* (Dec. 12, 2023).  The PUC further "found that the potential benefits of the project did not outweigh these impacts because the state could realize similar benefits from other solar projects located in areas that did not run afoul of town and regional plans." *Id.*  Apple Hill appealed the PUC's ruling.

On appeal, Apple Hill argued that the PUC's decision violated certain "provisions of the Vermont Administrative Procedures Act (VAPA), relied on evidence not in the record, contained impermissible post-hoc rationalizations, ignored [the Vermont Supreme Court's] remand order, and was arbitrary and capricious." *Id.*, ¶ 10.  Apple Hill further argued that the PUC ought to have allowed additional evidence and denied it due process and equal protection.  *Id.*

The Vermont Supreme Court affirmed the PUC's ruling.  The court found that Apple Hill had not been entitled to an additional evidentiary hearing since the parties stipulated the record was complete, and that its previous remand did not require an additional hearing.  *Id.*, ¶¶ 23-24.  The Vermont Supreme Court also rejected Apple Hill's constitutional challenges, in which it claimed the PUC's application of Vermont law was unconstitutionally vague and standardless.  *Id.*, ¶ 32. The court found that Apple Hill had failed to preserve those

issues in the most recent PUC proceeding, and that even if the
issues had been preserved, they were essentially a facial
challenge to a statute which the PUC had no jurisdiction to
address.

As part of its VAPA claim, Apple Hill claimed that the PUC
should have issued a proposal for decision and given the parties
an opportunity to comment.  Apple Hill argued that such a
proposal was required because the majority of the three-member
PUC did not hear the case or read the record.  *Id.*, ¶ 12.
Vermont law, 30 V.S.A. § 811, provides that no proposal for
decision is required "where the [PUC] does read the record or
hear the case, or both.  In such situations, the [PUC] is not
accepting the determination of its hearing officer without
itself evaluating the facts."

The Vermont Supreme Court acknowledged that the evidence in
the case was heard by a hearing officer, but found that Apple
Hill "provide[d] no support for its assertion that a majority of
the Commission members did not read the record, and the facts do
not support such an inference."  *In re Petition of Apple Hill
Solar LLC*, 2023 VT 57, ¶ 14.  The court noted that two of the
three PUC members were present at the March 2020 oral argument;
that the same two members signed the March 2020 decision; that
they also signed the order requesting additional briefing after
the Vermont Supreme Court's second remand; and that the final

6

decision issued several months after the parties submitted
briefing, "indicating that the commissioners had ample time to
review the record.  Under these circumstances it is reasonable
to conclude that a majority of the current commissioners
reviewed the record."  *Id.*

Apple Hill now contests the Vermont Supreme Court's
conclusion, arguing that the sheer volume of the record,
considered in the context of the PUC's other activities during
that time, undermines a finding that Defendants reviewed the
record.  Apple Hill further argues that Defendants' "silence on
the issue ... creates an adverse inference against them under
the missing witness rule."  ECF No. 16 at 9.  Apple Hill
contends that by remaining silent and failing to inform the
Vermont Supreme Court of the truth, Defendants violated their
ethical obligations, and that their disregard for the
requirements of 30 V.S.A. § 811 violated its constitutional
rights.  Apple Hill filed its Complaint on November 21, 2023,
less than one month after the Vermont Supreme Court's ruling.

## Discussion

### I.  Motion to Dismiss Standard

Defendants have moved to dismiss pursuant to Federal Rule
of Civil Procedure 12(b)(6).  In reviewing a Rule 12(b)(6)
motion, a court must accept the factual allegations set forth in
the complaint as true and draw all reasonable inferences in

7

favor of the plaintiff.  *See Giunta v. Dingman*, 893 F.3d 73, 79
(2d Cir. 2018).  A court may not dismiss claims unless the
plaintiff has failed to plead facts sufficient to state a claim
to relief that is facially plausible.  *See Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 570 (2007).  That is, a plaintiff must
allege facts showing "more than a sheer possibility that a
defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S.
662, 678 (2009).

## II.  **Judicial Immunity**

Defendants argue that Apple Hill's claims are barred by
absolute quasi-judicial immunity.  It is well-established that
judges have absolute judicial immunity from suit for their
judicial actions.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991)
("[J]udicial immunity is an immunity from suit, not just from
ultimate assessment of damages.").  Judicial immunity has been
extended to quasi-judicial officers, since the "role of the
'hearing examiner or administrative law judge ... is
functionally comparable to that of a judge.'"  *Montero v.
Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (quoting *Butz v.
Economou*, 438 U.S. 478, 513 (1978)).  Defendants in this case,
as quasi-judicial officers of the PUC, may therefore assert the
judicial immunity defense.

Absolute "judicial immunity is not overcome by allegations
of bad faith or malice," nor can a judicial officer be deprived

of immunity "because the action he took was in error or was in excess of his authority." *Mireles*, 502 U.S. at 11, 13 (internal quotation marks and citations omitted).  This immunity may be overcome only if the Defendants are alleged to have taken nonjudicial actions or if the judicial actions taken were "in the complete absence of all jurisdiction." *Id.* at 11-12.

Here, there is no claim that Defendants were engaged in nonjudicial actions, or that they lacked jurisdiction.  Apple Hill instead claims that judicial immunity does not apply to its claims for injunctive relief when declaratory relief is unavailable or inadequate.  *See* 42 U.S.C. § 1983 ("in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated, or declaratory relief was unavailable.").  The extent to which declaratory relief is unavailable, however, is due to Apple Hill's unsuccessful effort to obtain such relief from the Vermont Supreme Court in the form of reversal of the PUC's decision.  Indeed, "[d]eclaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order." *Ashmore v. New York*, No. 12-CV-3032, 2012 WL 2377403, at *3 (E.D.N.Y. June 25, 2012), *aff'd sub nom. Ashmore v. Prus*, 510 F. App'x 47 (2d Cir. 2013) (quoting *LeDuc v. Tilley*, No. 05-CV-157, 2005 WL 1475334, at *7

(D. Conn. June 22, 2005)); *see Davis v. Campbell*, No. 3:13-CV-0693, 2014 WL 234722, at *9 (N.D.N.Y. Jan. 22, 2014). Consequently, the situation presented here is not one where declaratory relief is unavailable; it is instead one where the request for such relief has failed.

Apple Hill frames its argument under 30 V.S.A. § 811 as a series of constitutional claims, again based upon the contention that Defendants failed to either review the record or issue a proposal of decision.  The Vermont Supreme Court rejected Apple Hill's claim, and this Court cannot issue declaratory relief to the contrary.  *See Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018) ("Since federal district courts are granted original — and not appellate — jurisdiction, cases that function as *de facto* appeals of state-court judgments are therefore jurisdictionally barred.").  Nor is injunctive relief appropriate, as Apple Hill is complaining of past judicial conduct and does not assert ongoing violations of federal law. *See Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future."); *Brik v. Brodie*, No. 23-CV-4330, 2023 WL 4373557, at *1 (E.D.N.Y. July 6, 2023) (dismissing claims for injunctive relief against judge because plaintiff "does not seek

to remedy a harm that is truly prospective, [and] does [not] show any entitlement to declaratory relief" based on the judge's past conduct).

As to the question of judicial immunity, Defendants were acting in a quasi-judicial capacity, no viable exception applies, the Court cannot grant any appropriate injunctive or declaratory relief, and both are entitled to immunity for their actions.

## III. Takings Claims Brought Against Individuals

Defendants further argue that Apple Hill cannot bring Takings Clause claims against them in their individual capacities because a taking is a governmental, and not an individual, act.  The Court agrees.  "The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits *the government* from taking private property for public use without just compensation."  *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) (emphasis supplied); *see Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021) (stating that the Takings Clause implicates "a simple, per se rule: The government must pay for what it takes.").

> The very nature of a taking is that a public entity is taking private property for a public purpose, and must provide just compensation in return.  This concept is inconsistent with the notion that someone acting in an individual capacity has taken property or could be personally liable for a taking.  By definition, the taking is not by a private person for private

11

> purposes, and the property does not belong to a
> private person who must accordingly pay just
> compensation out of private funds.

*Bridge Aina Le'a, LLC v. State of Hawaii Land Use Comm'n*, 125 F.
Supp. 3d 1051, 1078-79 (D. Haw. 2015), *aff'd sub nom. Bridge
Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610 (9th Cir. 2020).

Accordingly, it is not surprising that no "circuit court []
has explicitly held that a takings action can be brought against
a state official in an individual capacity." *Hinkle Family Fun
Ctr., LLC v. Grisham*, No. 22-2028, 2022 WL 17972138, at *4 n.2
(10th Cir. Dec. 28, 2022), *cert. denied*, 143 S. Ct. 2613 (2023)
(collecting cases). In fact, several courts have rejected such
claims. *See, e.g., Langdon v. Swain*, 29 F. App'x 171, 172 (4th
Cir. 2002) (per curiam) ("[T]akings actions sound against
governmental entities rather than individual state employees in
their individual capacities."); *Vicory v. Walton*, 730 F.2d 466,
467 (6th Cir. 1984) ("[A] 'taking without just compensation' in
violation of the fifth amendment is an act or wrong committed by
a government body" and "[t]he wrongful 'taking,' detention or
theft by an individual of the property of another is not a
constitutional 'taking' ...."); *United States v. Sandwich Isles
Commc'ns, Inc.*, No. 18-CV-145, 2019 WL 4017233, at *5 (D. Haw.
Aug. 26, 2019) ("[A] Fifth Amendment Takings claim cannot be
brought against the Individual ... Defendants in their personal
capacities."); *Katsaros v. Serafino*, No. 00-CV-288, 2001 WL

12

789322, at *5 (D. Conn. Feb. 28, 2001) ("Only governmental entities, and not individuals, can be liable for takings violations.").

The Court finds the reasoning of these cases persuasive and agrees with Defendants that Apple Hill may not assert Takings Clause claims against them in their individual capacities. *See Herman v. Town of Cortlandt, Inc.*, No. 18-CV-2440 (CS), 2023 WL 6795373, at *3–4 (S.D.N.Y. Oct. 13, 2023); *Simonds v. Boyer*, No. 21-CV-841, 2022 WL 11964613, at *4 (W.D. Pa. Oct. 20, 2022) ("There is ... one fatal problem with [plaintiff's] allegations: a Fifth Amendment Takings claim cannot be brought against the Individual-Capacity Defendants in their personal capacities."). To the extent such claims are brought against Defendants, they are dismissed.

## IV. Defendant Roisman

There is no dispute that Defendant Roisman is no longer a PUC Commissioner.  Insofar as Roisman is being sued in his official capacity, he may be substituted as a party by his replacement, current PUC Chair Ed McNamara.  Fed. R. Civ. P. 25(d) ("The officer's successor is automatically substituted as a party.").

Indeed, Roisman is no longer able to provide the relief requested by the Complaint.  To wit, he cannot vacate a decision of the PUC or provide any substantive relief for Apple Hill.

13

Apple Hill cites 30 V.S.A. § 3(e), which provides that if a commissioner retires "before [a] case is completed," he or she remains in that role until the case is concluded.  The statute further provides that a case becomes final when the PUC issues a final order.  30 V.S.A. § 3(f).  Here, that order was issued and Apple Hill's appeal was unsuccessful.  Apple Hill also references 30 V.S.A. § 3(h), which allows the Clerk of the PUC to appoint former commissioners to sit on certain cases.  Apple Hill's speculation that Roisman "could" be appointed under that provision is not a basis for retaining him as a Defendant in this case.  ECF No. 16 at 16.  The claims brought against Defendant Roisman are therefore dismissed.

## V.   Collateral Estoppel

The legal claims in this case are all predicated upon the assertion that Defendants failed to review the record in compliance with 30 V.S.A. § 811.  Defendants submit that the Vermont Supreme Court addressed that issue and that Apple Hill's claims are barred by the doctrine of collateral estoppel.  "The fundamental notion of the doctrine of collateral estoppel, or issue preclusion, is that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the parties or their privies."  *Constantine v. Tchrs. Coll.*, 448 F. App'x 92, 93 (2d Cir. 2011) (quoting *Ali v. Mukasey*, 529 F.3d

14

478, 489 (2d Cir. 2008)).  When the issue is litigated first in state court and then presented to a federal court, the "federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

Under Vermont law, collateral estoppel applies when the following criteria are met:

> (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

*Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265 (1990). Collateral estoppel applies to issues of both fact and law. *Mellin v. Flood Brook Union Sch. Dist.*, 173 Vt. 202, 209 (2001). The "critical inquiry is whether the party to be bound has had a full and fair opportunity to contest an issue resolved in an earlier action so that it is fair and just to refuse to allow that party to relitigate the same issue."  *Trepanier*, 155 Vt. at 266.  "The party opposing application of collateral estoppel has the burden of showing that it is appropriate to relitigate an issue."  *In re P.J.*, 2009 VT 5, ¶ 13.

15

Here, the first factor is satisfied as Apple Hill concedes that it was the appellant in the most recent proceeding before the Vermont Supreme Court. ECF No. 16 at 16. The second factor requires the issue to have been resolved in a final decision. The Vermont Supreme Court's ruling was clearly a final decision resolving the question of whether Defendants violated 30 V.S.A. § 811.

Apple Hill argues that the third factor, requiring the issues to be the same, is not satisfied because the Vermont Supreme Court did not find that the Defendants *actually* reviewed the record. The Vermont Supreme Court instead rejected Apple Hill's speculation that Defendants had failed to review the record given the surrounding factual circumstances. *In re Petition of Apple Hill Solar LLC*, 2023 VT 57, ¶ 14 ("Under these circumstances it is reasonable to conclude that a majority of the current commissioners reviewed the record."). Apple Hill argues that the question of actual review thus remains un-litigated.

Regardless of the Vermont Supreme Court's analysis, the fundamental question presented here is the same as that presented in state court: whether Defendants violated 30 V.S.A. § 811 by failing to either review the record or provide a proposal for decision. Apple Hill also alleges that by failing to inform the Vermont Supreme Court that its conclusion was

wrong, Defendants committed ethical violations amounting to constitutional harm.  The Vermont Supreme Court's conclusion, however, defuses both claims.  That court found no factual basis for a Section 811 violation, and Apple Hill offers no support for its contention that the PUC, and not Apple Hill, had the burden of proving whether the record was actually reviewed.  *Id.* ("petitioner provides no support for its assertion that a majority of the Commission members did not read the record, and the facts do not support such an inference").

Apple Hill argues that under the fourth factor, it did not have a full and fair opportunity to litigate because Defendants were concealing the truth.  When raising the issue before the Vermont Supreme Court, Apple Hill appears to have offered only speculation and circumstantial evidence in support of its claim. If it needed a remand to pursue its suspicions, either of a Section 811 violation or of ethical violations in the PUC's opposition papers, it could have requested appropriate relief. Apple Hill cannot come to this Court after-the-fact and claim that it did not have an opportunity to fully present its claim.

The fourth and fifth elements are generally considered together.  *In re P.J.,* 2009 VT 5, ¶ 13.  Apple Hill had a full and fair opportunity to present its claim before the Vermont Supreme Court, presumably asserting its strongest arguments, and

that claim was rejected.  The fairness factor weighs against reviewing that claim again here.

Apple Hill's final argument on this point is that, even assuming the five-factor test requires the application of collateral estoppel, various exceptions apply.  The listed exceptions include: differences in procedures between the two courts; a clear and convincing need for a new determination; the scheme of federal remedies contemplates that the federal claim may be asserted notwithstanding the state court adjudication; or the scheme of federal remedies contemplates the federal court making an independent determination of the issue.  ECF No. 16 at 19 (citing Restatement (Second) of Judgments §§ 28(3), 28(5), 86(1), 86(2)).  Apple Hill submits that these exceptions apply because of procedural distinctions, and because precluding litigation under 42 U.S.C. § 1983 would nullify certain federal rights.

Apple Hill offers, and the Court finds, no support for the proposition that these exceptions have been incorporated into Vermont law.[1]  Moreover, it is well established that issues litigated in state court receive preclusive effect in a subsequent Section 1983 proceeding.  *See Migra*, 465 U.S. at 81-

---

[1] If anything, the Vermont Supreme Court has relied upon the Restatement (Second) of Judgments to adopt a broad view of collateral estoppel.  *See Sutton v. Purzycki*, 2022 VT 56, ¶ 23.

83.   The Court therefore finds that collateral estoppel applies
to Apple Hill's claims.

## VI.  Failure to State Plausible Claims

### A.    Taking

Even assuming the above-discussed defenses do not apply,
Apple Hill does not allege plausible causes of action.  Count I
alleges violations of the Takings Clause.  The Takings Clause of
the Fifth Amendment provides that "private property [shall not]
be taken for public use, without just compensation."  U.S.
Const. amends. V, XIV, § 1.  That requirement applies to all
physical appropriations of property by the government.  *See
Horne v. Dep't of Agric.*, 576 U.S. 350, 360 (2015).

"The law recognizes two species of takings: physical
takings and regulatory takings."  *Buffalo Tchrs. Fed'n v. Tobe*,
464 F.3d 362, 374 (2d Cir. 2006).  A physical taking "occurs
when there is either a condemnation or a physical appropriation
of property."  *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761
F.3d 252, 263 (2d Cir. 2014) (citing *Tahoe-Sierra Pres. Council,
Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002)).
"A regulatory taking, by contrast, occurs where even absent a
direct physical appropriation, governmental regulation of
private property 'goes too far' and is 'tantamount to a direct
appropriation or ouster.'"  *1256 Hertel Ave. Assocs.*, 761 F.3d
at 263 (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537

19

(2005)); *see also Meriden Tr. & Safe Deposit Co. v. F.D.I.C.*, 62 F.3d 449, 454 (2d Cir. 1995) (a regulatory taking is governmental action that essentially "effects a taking").

In this case, Apple Hill is alleging a regulatory taking. ECF No. 16 at 20.  A regulatory taking occurs "when the government acts in a regulatory capacity" to infringe on an individual's property rights.  *Buffalo Tchrs.*, 464 F.3d at 374. As noted, a regulatory action will only be recognized as a taking when the "regulation goes too far."  *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922).

In determining whether a use restriction effects a taking, the Court applies the balancing test set out in *Penn Central Transportation Company v. City of New York*, 438 U.S. 104 (1978). That test focuses on three factors: (1) "the economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action."  *Id.* at 124; *Buffalo Tchrs.*, 464 F.3d at 375.

Here, the Complaint does not specifically allege an economic impact.  Apple Hill's briefing highlights the power sale contract, ECF No. 16 at 21, while the Complaint speaks generally of reasonable investment-backed expectations, ECF No. 1 at 6, ¶ 30.  Those expectations, as well of the value of the

power sale contract, would have been premised upon Apple Hill's acquisition of all necessary government permissions and permits.

The PUC had regulatory jurisdiction over the Project, and reached conclusions that were affirmed by Vermont's highest court.  Assertion of that jurisdiction does not constitute a regulatory taking.  As the Supreme Court held in *United States v. Riverside Bayview Homes, Inc.*:

> [T]he mere assertion of regulatory jurisdiction by a governmental body does not constitute a regulatory taking....  A requirement that a person obtain a permit before engaging in a certain use of his or her property does not itself "take" the property in any sense: after all, the very existence of a permit system implies that permission may be granted, leaving the landowner free to use the property as desired. Moreover, even if the permit is denied, there may be other viable uses available to the owner.  Only when a permit is denied and the effect of the denial is to prevent "economically viable" use of the land in question can it be said that a taking has occurred.

474 U.S. 121, 126-27 (1985).

When reviewing the character of the governmental action, courts consider whether the regulatory action "amounts to a physical invasion or instead merely affects property interests through 'some program adjusting the benefits and burdens of economic life to promote the common good.'"  *Lingle*, 544 U.S. at 539 (quoting *Penn Central*, 438 U.S. at 124).  The Vermont Supreme Court previously explained that the PUC's role is to determine the public good, *In re Apple Hill Solar*, 2021 VT 69, ¶ 8, and the PUC correspondingly found that the Project's

potential benefits did not outweigh the negative regional impacts.  That determination, made in response to a voluntary petition for a CPG, constituted appropriate governmental action and did not amount to a regulatory taking.

**B.   Equal Protection**

Apple Hill alleges Defendants treated its Project differently than other, similarly-situated projects "because in the case of another applicant for a CPG, the Defendants would have issued a proposed adverse decision first and not deprived such applicant of its due process rights."  ECF No. 1 at 7, ¶ 38.  Apple Hill characterizes this allegation as a "class of one" equal protection claim.

The Complaint does not cite any similarly-situated projects.  Apple Hill's briefing refers the Court to related litigation in which plaintiffs reportedly offered "a detailed account of the Defendants' actions to run Plaintiff and its owner out of Vermont," and proposes that it can amend its Complaint to provide additional details.  ECF No. 16 at 22. Defendants argue that the Complaint fails to state a plausible "class of one" claim.

A plaintiff may bring a "class of one" equal protection claim when alleging it was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v.*

*Olech*, 528 U.S. 562, 564 (2000) (citations omitted).  In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted).  The plaintiff must establish that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010).

Apple Hill claims that it was singled out for special treatment and treated differently than all other CPG applicants. Apple Hill's allegation suggests that, even assuming an identical applicant, Defendants would have treated its case differently and denied it due process.  However, the law requires a showing of similarity with other applicants.  Without such a comparison, the Court and any finder of fact would have no way of considering whether Defendants' actions were rationally based.  Moreover, the factual underpinning of Apple Hill's differential treatment claim – the alleged failure to review the record – is at odds with the Vermont Supreme Court's

finding.  With no allegation of a similarly-situated applicant,
and no plausible basis for finding either a violation of state
law or that Defendants' denial of the CPG was unsupported by a
legitimate government policy, Apple Hill's equal protection
claim fails as a matter of law.

### C.   Substantive Due Process

Counts III and IV of the Complaint each cite due process
violations.  Neither cause of action specifies whether it is
being asserted as a substantive due process claim or a
procedural due process claim.  Defendants' motion to dismiss
addresses both types, and again argues that neither claim is
plausible.

To state a claim for a violation of substantive due
process, a plaintiff must allege facts to show: (1) a "valid
property interest in a constitutionally-protected benefit" and
(2) deprivation of that interest in a manner that is
"arbitrary," "conscience-shocking," or "oppressive in the
constitutional sense." *Doe v. Zucker*, 520 F. Supp. 3d 217, 258
(N.D.N.Y. 2021) (cleaned up).  In the context of a land use
application, the Court must assess whether the plaintiff had a
constitutionally protected property interest that was "more than
an abstract need or desire" and instead "a legitimate claim of
entitlement." *RRI Realty Corp. v. Inc. Vill. of Southampton*,
870 F.2d 911, 915 (2d Cir. 1989).  A claim of entitlement arises

"only when the discretion of the issuing agency is so narrowly circumscribed as to virtually assure" conferral or approval. *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994); *see also Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999) (explaining that plaintiff was first required to demonstrate a "clear entitlement to the permit under state law" to prove that the denial of her permit deprived her of her substantive due process rights). Whether Apple Hill had a constitutionally protected property interest is a question of law. *RRI Realty Corp.*, 870 F.2d at 918.

Apple Hill's substantive due process argument focuses on the question of whether Defendants acted arbitrarily. Apple Hill has not, however, set forth any basis for finding a valid property interest. In short, Apple Hill has not plausibly alleged that it had a property interest in a CPG. Defendants clearly had significant discretion with regard to approval of CPGs, and the Vermont Supreme Court's affirmance bolsters Defendants' contention that the CPG was not "virtually assure[d]." *Gagliardi*, 18 F.3d at 193. Moreover, even assuming Defendants did not review the record as alleged, there is no plausible allegation that their conclusion would have been different if they had performed a complete review. Apple Hill has therefore failed to state a plausible substantive due process claim.

25

D.   **Procedural Due Process**

Apple Hill explains in its briefing that, if amended, the Complaint would set forth four separate procedural due process claims.  ECF No. 16 at 22-24.  The first is that Defendants violated an established state procedure.  Again, Apple Hill must allege a federally-protected property right.  *See, e.g., Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 237 (E.D.N.Y. 2009) ("To demonstrate a violation of due process rights ..., whether procedural or substantive, a plaintiff must first demonstrate the possession of a federally protected property right to the relief sought.").  As the Second Circuit has noted, "the fact that a state has established procedures to be followed does not mean that it has created a protectable liberty interest." *Rodriguez v. McLoughlin*, 214 F.3d 328, 339 (2d Cir. 2000).

Apple Hill is essentially claiming that not only was it was entitled to a full review of the record, but also to proof that each Defendant conducted such a review.  Apple Hill cites no authority for the proposition that it had a property interest in such a showing, or that the lack of such proof denied it a protectable liberty interest.  Apple Hill also submits that "while a state procedure is not determinative of what federal due process requires," Defendants in this case failed to meet "the bare minimum," without which "a person that appears before the agency can have its case decided by someone that knows

26

nothing about the case." ECF No. 16 at 22. That is clearly not what happened here. As the Vermont Supreme Court properly observed, Defendants attended hearings in 2020, subsequently requested additional briefing, and issued a decision months after briefing was concluded. That court found it reasonable to conclude that Defendants had reviewed the record, and Apple Hill's speculation to the contrary does not support a plausible due process claim. *See Twombly*, 550 U.S. at 555, 570 (holding that a complaint must plead "enough facts" to "raise a right to relief above the speculative level").

Apple Hill's third and fourth due process claims allege that Defendants failed to hold a new hearing after the second remand from the Vermont Supreme Court. The Court takes judicial notice of the order on the second remand, *see* Fed. R. Evid. 201(b), wherein the PUC found that Apple Hill had waived the right to introduce new evidence that could have been presented years earlier, and had previously taken the position that no additional evidence was needed. *Petition of Apple Hill Solar LLC*, Case No. 8454, Final Order on Second Remand at 5-6 (May 16, 2022). The Court therefore finds that Apple Hill's procedural due process claims fail as a matter of law.

### E.  Ethical Violation

Count IV alleges a due process violation based upon Defendants' alleged violation of a Vermont administrative order.

The order, as cited in the Complaint, reads: "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety."  ECF No. 1 at 9, ¶ 51.  Apple Hill alleges that by failing to disclose that they did not, in fact, review the record as required by Section 811, Defendants violated this ethics rule. The Complaint does not explain how Defendants' alleged silence violated Apple Hill's federal due process rights.

Defendants' motion to dismiss does not address the alleged ethical violation directly, but does seek dismissal of the due process allegation in Count IV.  For reasons set forth above, the Court finds no plausible claim under the Due Process Clause. Assertion of a state ethical code violation does not alter that conclusion.  Count IV is dismissed.

## Conclusion

For the reasons set forth above, Defendants' motion to dismiss (ECF No. 8) is granted.  Defendants' motion to stay discovery (ECF No. 12) is denied as moot.  Dismissal is with prejudice, and without leave to amend, as the Court finds that any effort to amend the Complaint would be futile.

DATED at Burlington, in the District of Vermont, this 23rd day of August, 2024.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge